v. United States v. Curry. Thank you. Is it Fryfield or Freefield? Fryfield. So Mr. Fryfield, you have reserved two minutes for a rebuttal. Yes, Your Honor. So you may proceed. I am Andrew Fryfield. I'm appearing on behalf of Dalvon Curry. I did not represent Mr. Curry below. I'm going to begin with the, for lack of a better word, the Sullivan counts. The government fails to address our argument that the verdict on the Sullivan counts is not entitled to the usual deference under Jackson v. Virginia because this Court simply can't determine what the jury found regarding the justification defense. That is, the jury could have found that there was an exception to the justification defense that applies, or, by contrast, it could have found that the government disproved Curry's justification defense beyond a reasonable doubt. Without knowing what the jury did, there can be no deference to the verdict. Similarly, Robert, the jury was instructed on both of those things, right? They were instructed that there were exceptions to the justification defense. Right. That if they applied, they didn't have to consider justification. In addition, alternatively, essentially, they were instructed that if one of these exceptions doesn't apply, then they should consider the justification defense. What's the problem with that? There's not a problem. It's just a — The jury came back and found him guilty. No, there's no question about that, but the issue that I'm raising is whether or not what type of deference this Court should give to the verdict under Jackson v. Virginia. You're saying acts in a special verdict form that lays out each of the proffered justifications, there's no deference that's awarded to the jury's verdict? Essentially, yes. But I'm separating the exceptions. I'm sorry, Judge. Please, no. Finish your answer. I'm separating the — it doesn't have to be a special verdict with respect to each one of the exceptions. The issue is did the exception apply or did the government disprove justification beyond a reasonable doubt? My argument is that this Court cannot say that the government proved beyond a reasonable doubt — excuse me, disproved justification beyond a reasonable doubt because the jury may have relied on one of the exceptions. That's the argument. It seems to me that the argument you're urging would gut Jackson v. Virginia because it's possible a jury would find that a witness was not credible or it could find that the witness was credible but the evidence was insufficient in some other respects. I mean, this could go on forever. I mean, this is why the law does not favor special verdict forms in criminal cases. Juries are given the instruction, and then when we review under Jackson v. Virginia, we assume that they viewed the evidence on each point on which they were instructed in the light most favorable to their verdict. So here, the arguments I understood you to be making were that there were charge defects in giving these exceptions to the jury because the evidence wasn't sufficient to support the exceptions. Isn't that your argument? Yes, it is my argument. All right, so tell us why the judge was wrong to give the exception charges. We view the evidence in the light most favorable to the government. One of these we view more strictly than the other two, DeNovo v. Eric, you know, an unpreserved challenge. And tell us what was wrong. I will. I just want to leave it at the point, though. Is the court going to say that the jury found that the government disproved justification beyond a reasonable doubt? Is that how they're going to defer to the jury's verdict? No, no, because we don't have a special verdict. Yes. So my argument is that there's nothing to defer to. Did you request a special verdict? No, but nor did the government. No, neither side requested it. The absence of a special verdict makes a difference here. Okay. With respect to Judge Radji's question, there was no evidence that my client was the initial aggressor. Therefore, that exception didn't apply, and the court should not have charged as to that particular. Your argument on this point, point one, is that the evidence did not warrant instructing the jury as to the exceptions to justification because the government failed to disprove justification as a matter of law. So as I understood it, I'm looking at, first, could this evidence allow the government to disprove justification? And, two, should the jury have even been charged on the exceptions? No. Tell us why there are those problems in this record. Judge, they're completely separate as to whether or not the government disproved justification beyond a reasonable doubt. Well, they're not completely separate because you made them point one. You didn't make them point one and point two. But in any event, I'm trying to get you to help us out on the argument you made in your brief. Okay. As I said, there was no evidence to warrant any of the three exceptions to the justification charge. It was undisputed that my client was entitled to a justification charge. The government, I submit, had a lot of fear that the jury was going to come back and find that the government failed to disprove justification beyond a reasonable doubt. Therefore, they came up with these ideas, which is permissible under the law if the evidence allowed it, that they're going to say to the jury, you don't even need to consider justification. And this is what the district court said. You don't even need to consider justification if you find that one of these three exceptions apply. And they produced these three, quote, exceptions to the justification defense. And it appears that, you know, we can't, as I said, we can't say what the jury did. The jury may never even have gotten to justification because under the court's instructions, one of the exceptions applied. So that ‑‑ Yeah. Or they would have said, well, we're not unanimous on this. As they're deliberating, we don't know. But it doesn't matter because one of the exceptions applies. And ‑‑ Yes. That's correct. What's wrong with that? Why can't the jury go with either of the exceptions? I don't ‑‑ there's nothing wrong with that. I want to be clear. There's nothing wrong with that at all. The problem is that the exception, that the evidence didn't warrant instructing the jury as to any of the exceptions. All right. Well, look, why don't you focus right on that? The combat binary, which is your preserved balance. Yes. And therefore, we're going to have to look at de novo. I mean, there is considerable evidence as to the activity between these parties in the relevant time. And I'm not clear as to why you think that, viewed in the light most favorable to the government, why that wasn't sufficient to support a combat by agreement. There are all these, you know, statements back and forth. They're going to see each other. There's the history of violence. I mean, why isn't that enough? May I just address one thing before I ‑‑ and I will answer that question, I promise. The instruction as given allowed the jury, and the government so argued, the instruction as given wasn't that between these two parties there was an agreement to have a combat by agreement. It was they made three arguments. One, all of the gangs in Buffalo had an agreement amongst themselves to shoot each other. Second, these two particular gangs, the guys and BFL, had an agreement to shoot at one another. And third was each of these two individuals had an agreement to shoot each other. And the government, because of the way that the instruction was given to the jury, the government was free to argue on any three of those, and they did so. Now, as to Your Honor's question, I submit it's insufficient to just because they were exchanging puffery and words over social media that, you know, stay away from here or I'm going to shoot at you, that doesn't mean that in the event that they do see each other that it's automatically that they're going to shoot each other. Isn't that a jury argument? I mean, that's an inference to be drawn from the facts of social media posts, right? Okay, but as I said, the government, the judge provided no guidance at all to the jury as to what it was that they were to consider in connection whether there was. The answer is I don't think it was a jury issue. The last time that they exchanged words was about six months, I believe, before. Now, there may have been one in between, but it was six months, and I think that it was a couple of weeks before, where they didn't say if I see you, I'm going to shoot you. One guy, the other guy said if I see you, I'm going to shoot you. But my argument to you, Judge, is that two social media posts saying I may shoot you if I see you is insufficient to undo a justification defense. Well, you know, let's talk about it in the light most favorable to the government, not least favorable, which is what you're doing. Okay. Curry's March 2015 Facebook comment to Sullivan is end up like your cousin, which means dead, right? Yes. See you real soon in capitals. Then there's the July 2015 Twitter exchange in which Curry tells Sullivan he would come find him, and Sullivan responds he would come find Curry instead, asking is you really over there not trying to waste my time, which could be inferred as, you know, I'm coming to get you. That's Sullivan. Okay. Well, this is a mutual combat thing. That in late September, Sullivan drives into BFL territory and fires off 17 shots in memory of his late cousin, whom Curry had been mocking. That's not just social media posts. That's 17 shots fired. In late November 2015, so that now we're a week before Curry shoots Sullivan, Curry and Sullivan engage in the hostile Facebook exchange where Sullivan warns Curry, I'll see you. Say no more. I mean, this could all be construed as, you know, these folks are planning to fight it out with each other and their weapons are going to be guns. Yes, Your Honor. So if that's the case, that seems to support the instruction, and I'm having a problem understanding why you think it's error to have given the instruction. The instruction as given was error. I argue that. And in addition, I'm arguing that it was insufficient to give the instruction. Here's why, Judge. A person has a right to defend themselves, period. I submit the idea that the Second Circuit is going to give its imprimatur to the idea that just because two teenagers are exchanging ugly words on Facebook, that either one of them forever gives up their right to defend themselves. The government below kept saying, this is the Wild West, the way these gangs are treating each other. In fact, it's this instruction that is going to create a Wild West. If all that matters is a couple of threats over Facebook between two persons, suddenly arises to a waiver of your right to defend yourself. But again, this sounds like a jury address. Was that address made to the jury? I presume it was. Was what address? Was the argument you just made now made to the jury with respect to justification? It was, right? I'm not sure if that particular argument was made. I believe that he, you know, it's not a justification, it's a waiver of justification. I was making a legal argument just now, Judge, that- No, no, it sounded like a factual argument, really. I mean, this is, in other words, this is a situation where he had to defend himself. This is not an agreement, combat by agreement. This is self-defense. And that is an argument that you could make. Okay. But the judge instructed the jury on the exceptions to justification because if they found that this was, you know, a duel the way they have in the Old West, well, that's not-you don't get a self-defense argument if it's a duel. From a policy standpoint, it's dangerous stuff. It's dangerous stuff without a firm agreement. I'm going to meet you here and we're going to shoot at each other. Just this vague thing six months earlier, if I see you around, I may shoot at you. It's dangerous stuff to license kids, really teenagers, to start shooting at each other for fear. If he said to me this, it may be interpreted that- It might be dangerous stuff to be telling people that, you know, they can arrange to have shootouts on the street and then they'll get to say self-defense at the end of it. Okay. So there are dangers here, but we're really talking about the legal argument. So let's stay focused on that. Okay. That's my argument, that it didn't rise to the level of warranting the instruction. And really what the instruction did was it allowed the jury not to even consider the justification defense at all. It completely put it to the side so that there was really nothing to talk about in that regard. And, you know, insofar as whether-if you look at these New York cases, Judge, all of the judges, when they give the argument, when they deliver the instruction, they flesh it out. This instruction was one sentence. So while my client-excuse me, counsel below objected to the instruction completely, and he didn't completely say, you know, you should flesh it out and say it has to be a tacit agreement, who will leave parties to this agreement, things like that, I just don't think that the court can hang its hat on, or the court below shouldn't have hung its hat on, the fact that there were a couple of social media exchanges, that they amount to a waiver of your right to defend yourself. What about the evidence of what happened that night? Yes. It seems to me that the evidence-there was sufficient evidence that Curry pulled the gun first, that Sullivan did not pull a gun, he had a gun with him, but that he did not pull first, and therefore there was no basis for any justification. Oh, it's undisputed. The government conceded. They're the ones who came forward and said we're conceding the justification defense. But insofar as there's sufficiency in the evidence- I'm talking about the facts of the case, not so much the- Okay. That's my strongest point of all. Curry was on the porch of the house where he was residing. Sullivan came up to him with a gun pointed at him and shot at him. I don't know how- There is no evidence that Curry pulled his gun out first, and then Sullivan tried to reach for his. There's no such evidence. The only evidence of that, the only evidence of that was what one person said that Curry had said. In other words, a cooperator came in and said, Curry said this. Curry said he pulled his gun first, and he shot the guy first. It's completely inconsistent with the physical evidence, completely. So even the cooperator wasn't telling- Well, all these statements to other prisoners or admissions, none of them mentioned a justification. They all were Curry saying that he did it and was taking pride in it. It's inconsistent with the physical evidence, and everything- That's an argument to the jury. We have to assume the jury believed that your client admitted that. I agree with that, but it's still- So once you get that- But if it's undermined by the evidence, then- Also, I think the argument that the court's making to me now is that he wasn't justified. It's not undermined by the evidence. That's evidence. That's a piece of evidence. You've got other evidence. Yes. The jury decides. Yes. Okay, so- And they did. Well, I don't- That's the question. What did they decide? That was the issue I tried raising initially. Did they decide that my client wasn't justified? Or did they decide- They had sufficient evidence to decide is really the question. Okay, I stand by that there was insufficient evidence for them to decide against my client on justification. I feel confident about that. I was hoping to briefly address the wines counts. Well, you've got two minutes for rebuttal, so we'll give you a chance. Okay, thank you. We'll come to that later. Ms. Richards, we'll hear from you now. May it please the court. Monica Richards for the United States of America on this appeal. I think that the court has fleshed out and understood and addressed the issue with regard to the justification defense. What I want to make sure is that the concession that was alleged that was made was to the instruction having been given, not that the defendant was justified in the shooting, and I just didn't quite hear it right, and I want to make sure that that is not perceived as a concession on government's part. With regard to the justification defense instruction, the instruction as given is not disputed. The way that it was given was not disputed before the district court. There were no exceptions made. There were no exceptions taken during the trial. What we do know here is that we have a defendant who was not pure of heart. When he engaged in this shootout, what he did was he instigated. They engaged in these exchanges beforehand. There was an actual shooting by the victim, Sullivan, of a gang member of the defendant, Currys, just a couple weeks before. This is not just Facebook chatter or back and forth. I believe my colleague used the terms engaging in puffery. This was no puffery. This was actual shooting events that occurred, sadly, between these. Well, whether it's puffery or not, it seems to me is an issue for the jury. Also true. Otherwise, the court would be making a finding as to something being puffery or mere puffery. So I was using that, Your Honor, to explain that the lead-up to this event, we can't just view this through the narrow lens that my colleague is asking us to. What we did have was this engagement. Then we had a defendant who didn't retreat, who did shoot first. We have not just the co-defendant. I guess there is some dispute in the record as to whether he stayed on the porch or whether he walked towards the car, right? Well, what we do have is the witness testimony of the eyewitness. The only eyewitness to the testimony was that he was on the porch and that he shot first. She didn't see any shooting from now. So that would be different than the testimony which came in, I guess, from Green, who is a cooperator, who says he was told that Curry advanced to the car and he drew first. Told by Curry. Yes, right. So the jury could believe either of those or try to reach some compromise between them. But the fact that there is evidence in the record is what would justify a jury instruction, right? Evidence? I'm sorry, if you could repeat that? The fact that there is evidence in the record that he approached the car might be relevant to one exception and that he stayed on the porch might be relevant to another exception. Well, the other evidence, I mean, it was just the ballistics evidence that showed that all the, that showed the, the ballistic evidence rather showed that there were shots fired from the porch, Your Honor. So I would, I'm not sure that that helps or answers the court's question, but it really wasn't just in terms of giving the justification defense. It really wasn't a reliance on anyone. Well, initial aggressor instruction requires him to have been the initial aggressor, right? If he walked towards the car, that would be relevant to the initial aggressor exception. I think that is all part and parcel of what the court heard when it decided to give the instruction. I think that there was other evidence that demonstrated that he was the initial aggressor here, that he did shoot first, his own words to his. Are we going to equate initial aggressor with first shooter? Well, that's the problem, too. Correct. That's also a problem. I would suggest to the court that it need, that it shouldn't just limit it to that, that in terms of whether or not the instruction is given here on this court's review for plain error was that, I mean, this court is here reviewing that instruction on plain error, is a bigger lens that this was an undeniable instigation of this event, knowing what had happened before based on similar instigation events, knowing what had happened with this very victim before in terms of shootings back and forth between these two gangs. So then with regard to the remainder, what we do have here is somebody. Was there evidence to know that, as I assume, that Sullivan was looking for, was trying to find Curry, and drove around the neighborhood and then came up and parked at the evidence? No. We had the Facebook references. I don't want to walk away from the microphone. We had the no indication within the immediate time frame, like that night, that Sullivan was looking for Curry. No. But we do have Curry putting himself in an area where he knew Sullivan to be. Yeah. I understand that. But there was no, I maybe may have misremembered this, the idea of a car driving by first before it came to rest. I don't think. Or Sullivan. Right. Sullivan was in a vehicle that drove by. That's right. The porch where, thank you, the porch where the defendant Curry was, and that was the house where he was staying. Right. And then the car stopped. So Curry had every reason to believe that this guy was going to be a problem. He did. Yeah. And that's where the court, the instruction on the justification defense, there's no, you know, no objection from the government on the justification defense having been given. But then it was up to the jury to decide whether or not that was warranted where somebody, again, who put himself in that position also demonstrated no indication following that that was justification. He ran. Then he lied to the police. He created alibis. He had somebody lie for him to a grand jury. He celebrated with his fellow gang members. He told the police during the interview I wasn't there. If this was, he actually even said if I had been there, I would have. It's the old double defense. I wasn't there. And if I was, I shot in self-defense. Correct. And the jury heard all that evidence. And that was up to the jury that was instructed on all of the, given the proper instruction with regard to that. I would also say that the same jury, if I could anticipate my colleague's arguments on rebuttal, also heard about the Wimes murder a year later. And the murder of Xavier Wimes that occurred a year later was oddly similar in that there was Facebook exchanges or social media exchanges beforehand. Wimes shows up at a party. He attacks Sullivan in front of his, with his fellow gang members there. He gets beat up. That's not enough for the defendant. Wimes then jumps out of a second story window to try to get away from everybody. Falls and breaks his leg. That's not enough for Sullivan. Sullivan comes with a gun while he's on the ground and shoots him more than ten times. That's what this jury also heard. So to say that this jury's indication, and I don't mean to say that that doesn't mean that the first one wasn't self-defense. What I'm saying is this jury heard this repeat evidence of somebody who was not pure of heart, somebody who was really going to do what he said he was going to do. And when he flashed a gun on his Facebook posts, when he said I'm going to see you, when he said these things that I'm going to see you, I'm going to, I know where you are, I know, you know, and indicated that he was after him and that he was serious, that that was something that this jury also heard. So with regard to the argument that is made with regard to the Wimes murder, it's not a self-defense or a justification there. It's that he didn't do it to maintain or increase. I would again suggest that Delvon Curry's own posts on social media defeat that claim. He was after the fame and glory that came in the gang membership, horribly and sadly, with being a shooter. And that's what he achieved. And he was celebrated for it. And nobody took a gun from him after that. There's evidence in the record that they shared guns, and after these shootings nobody was coming and telling Curry to give them a gun. He got to keep that chrome gun that he flashed around. Finally, with regard to the claim, unless there's any further questions on the murders, with regard to the claim that there was no evidence of drug trafficking or possession of a weapon as charged in Counts 2 and 3, again that's undermined by Curry's own posts on social media, where he says words to the effect of, I hang with the hustlers, killers, and robbers. All we do is trap. And there was evidence that trap meant sell drugs. And we on a whole lot of gang shit. And then he followed that with a gun, with the emojis representing a gun and drugs. The claim that he didn't know the extent of the drug dealing that was going on is irrelevant. Obviously they've conceded with regard to Count 1. The Count 1 is the RICO, and he didn't have to do those things with regard to Count 1. Count 2 is the drug conspiracy. And he did sell marijuana, and he obviously did do these things in support of protecting the territory of his gang. And by inference, he was engaged in that conspiracy to the extent that the other gang members were also selling drugs that were beyond the marijuana which the defendant sold. If there's no further questions on that, then I would otherwise rest in my brief. Thank you. All right, thank you. Mr. Freifeld, you have two minutes for rebuttal. I urge the court to look at Appendix 2542 through 2544. That's an exchange between Sullivan and Curry. Everything that you see there, Sullivan is the aggressor, not Curry. Curry's basically saying, leave me alone. And Curry's saying, and Sullivan says to him, remember what my man said to you. Don't come on the west side anymore. And it's important to note that Curry was on the west side. He was staying at his friend's house on this particular night. So he had more reason to be there than Sullivan did. This wasn't where Sullivan worked. This wasn't where Sullivan lived. Curry was staying at his friend's house. Curry was standing on a porch. Sullivan came up to the porch with a gun in his hand and pointed it at him. The idea that Curry could have possibly been the initial aggressor under that scenario, I submit, is entirely undermined by the physical evidence. But part of the problem is that there's some conflicting evidence, and that's not unusual. And some of the conflicting evidence might be more relevant to one exception, and other parts of the conflicting evidence might be more relevant to another exception. The issue for the district court is whether there's evidence that, if believed, would justify an instruction on the exception, right? Yes. The physical evidence completely undermined the cooperator's claim that Curry ever left the porch. There is no reasonable view of the evidence that Curry ever left the porch, despite what the cooperator said that Curry said, because it was entirely undermined by the physical evidence. And so you're saying that the district court sort of was required to make that finding rather than the jury? Insofar as the initial aggressor instruction is concerned, yes. Yes. There was three minutes that separated his appearance in the deli and his being on the porch. There's only three minutes he had to get there. It was 675 feet away. If the cooperator's testimony about what Curry allegedly said was, in fact, the truth, what kind of sense does it make that Curry was on the porch, he went out on the street and looked at the car and then returned to the porch in order to shoot? It doesn't really add up. That's an argument that, as a matter of law, these witnesses could not be believed. Is that right? It's not that the witness couldn't be believed. It's possible that Curry told the witness that that's what happened. But the evidence shows that that's not what happened. I'm not saying the witness should be disbelieved, although I actually am. Well, you're saying your client should be disbelieved. Either one or the other. Either my client was lying to the cooperator, or the cooperator was lying about what my client had said. That's true. I am arguing that. Those arguments were never made to the district court because you never challenged or your predecessor never challenged the giving of a first aggressor charge. It's plain error review. And now you're saying, if I understand your argument, the reason it's plain error is that these witnesses were either lying or my client was. Is that what this reduces to? Because I would have a problem finding that on this record. Especially obliged as we are to view the evidence in the light most favorable to the government. The shots were fired from the porch. Sullivan's shots were fired from the street. How could my client have been the initial aggressor under any scenario? Under any scenario. Under those facts, which are undisputed, how could my client have been the initial aggressor? That is my argument. Yes. To be honest with you, what were the ballistics on this one? Where were the casings found? All of them were found on the porch. All five of them. From my client's gun, every single one was on the porch. The three that were in the street were from Sullivan's gun. They squared off and faced at each other with my client on the porch and this guy in the street. They were looking at each other and they fired at one another. That's what happened. But that doesn't get to who was the initial aggressor. If my client's on the porch and he comes at him, that's my argument, Judge. Let me just finish. Yes. There is one eyewitness who sees shooting from the porch and says the person in the street ran away. That's Allison Mitchell. Yes. Then there's Hakeem Humphrey and Rock Wong Green who testify to Curry's confessions or admissions that he was the initial aggressor. Now, I understand you have the ballistic evidence that they were both shooting, but that doesn't tell us anything about who was the initial aggressor. And there's the evidence that he was. We're not the fact finders. We're considering that the jury got to assess these witnesses and credited them. Allison Mitchell's testimony was basically what I've said, that these two squared off at each other and looked at each other and shot each other. She saw only the people on the porch where Curry was situated shooting. The person in the street ran away. I mean, yes, they squared off, but that's what she saw. So, look, I'm not saying it's determinative, but you're saying that as a matter of law, no jury could have found your client was the initial aggressor despite two statements that he made that he was. That's an awfully hard thing for us to conclude, it seems to me. Okay. And I know both of those statements were completely different, by the way. One said he confessed to XYZ. The other said he confessed to ABC. So those two cannot be harmonized. But, you know, yes, Judge, that's the argument. If my client's standing on a porch and the other guy comes to him, that's my argument. How could he possibly be the initial aggressor? And the only evidence, again, that he was never not on the porch, that he was other than on the porch, are these alleged admissions, as Your Honor put it. I'll just finish. I never got to the warrants counts, so it'll be. This is the first time that my client, this is the first incident where my client ever shot anybody. So for the government to come up here and say, you know, that there was all this unfortunate shooting going back and forth. Sullivan shot at his friends, you know, five, six times. Curry never shot at anybody. And second, the reason that my client would have lied about and not claim self-defense when he spoke to the police was he had a gun on him. And he's not going to readily admit, I submit, to having a gun on him. So that's the sum and substance of my arguments. Okay, thank you, Mr. Freifeld. We will reserve the decision. Thank you, Mr. Richard.